IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCIPAL GROWTH STRATEGIES, LLC, *et al* <br><br> Plaintiffs, <br><br> v. <br><br> AGH PARENT LLC, *et al* <br><br> Defendants. <br> v. <br><br> PLATINUM MANAGEMENT (NY) LLC, *et al* <br> Nominal Defendants. | Civil Action No. 19-CV-01319-CFC |

## MEMORANDUM OPINION

April 6, 2020

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Pending before me is Plaintiffs' motion to remand this case to the Delaware Court of Chancery, from which it was removed to this Court by Defendants CNO Financial Group, Inc., Washington National Insurance Company, Bankers Conseco Life Insurance Company, and 40/86 Advisors, Inc. (collectively, the "Removing Defendants"). D.I. 9. The Removing Defendants and two other defendants, Senior Health Insurance Company of Pennsylvania and Fuzion Analytics, Inc. (collectively, the "SHIP Defendants;" and collectively with the Removing Defendants, the "Objecting Defendants") oppose Plaintiffs' motion. D.I. 17; D.I. 19.

I. **Background**

Four Plaintiffs filed the Complaint in the Court of Chancery that led to this action: Platinum Partners Value Arbitrage Fund L.P. (PPVA), Martin Trott, Christopher Smith, and Principal Growth Strategies, LLC (PGS).

PPVA is a limited partnership investment fund that has been in liquidation proceedings in the Financial Services Division of the Grand Court of the Cayman Islands since August 2016. In November 2016, pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 1501 *et seq.*, a Southern District of New York (SDNY) bankruptcy court issued an order recognizing the Cayman

Island liquidation proceedings as a "foreign main proceeding," that is, "a foreign proceeding pending in the country where the debtor has the center of its main interests[.]" 11 U.S.C. § 1502(4). The purpose of Chapter 15 is to "provide effective mechanisms for dealing with cases of cross-border insolvency" in order to promote the fair and efficient administration of foreign bankruptcy proceedings and protect the interests of creditors, debtors, and other interested entities in those proceedings. 11 U.S.C. § 1501(a).[1]

Trott and Smith are the Joint Official Liquidators of PPVA in the Cayman Island proceedings. They are also, by virtue of orders issued by the SDNY Bankruptcy Court in the PPVA Chapter 15 proceedings, the "foreign representatives" of the Cayman Islands PPVA estate. The Bankruptcy Code defines "foreign representative" as "a person or body . . . authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

---

[1] A "debtor" is defined for Chapter 15 purposes as "an entity that is the subject of a foreign proceeding." § 1502(a). A "foreign proceeding" is defined as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

2

The SDNY orders that designated Trott and Smith "foreign representatives" also (1) "granted" Trott and Smith "authority to assert claims of [PPVA] against parties that are subject to jurisdiction in the United States"; (2) "entrusted" them with "the administration or realization of all or part of the assets of [PPVA] within the territorial jurisdiction of the United States"; and (3) "established" them "as the exclusive representatives of [PPVA] in the United States." D.I. 1-4 ¶¶ 9–10.

The fourth plaintiff, PGS, is a Delaware limited liability company that was formed in 2013 to hold PPVA's interest in a promissory note issued by Agera Energy, LLC.

Plaintiffs alleged in their Chancery Court Complaint that various parties, including the Objecting Defendants, orchestrated a series of transactions that "stripped away" the Agera promissory note from PGS to the detriment of PPVA and PGS. D.I. 1-1 ¶ 1. The Complaint has eight claims for relief. *Id.* ¶¶ 328–457. Five of the claims are based on Delaware state law; four of the claims are based on Cayman Island law. *Id.*

In their Notice of Removal, the Removing Defendants argued that "[r]emoval is appropriate here under 28 U.S.C. § 1452(a) because this Court has original bankruptcy jurisdiction under 28 U.S.C. § 1334(b)." D.I. 1 ¶ 19. Under § 1334(b), this Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11[] or arising in or related to cases under title 11."

Under § 1452(a), with exceptions not relevant here, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334." The Removing Defendants argued in their removal notice that "the Chancery Action is . . . related to" the SDNY Chapter 15 bankruptcy proceedings, D.I. 1 ¶ 21, and that "the Chancery Action 'arises under'" title 11 because Trott and Smith "brought the [Court of Chancery] action pursuant to powers granted under chapter 15 and pursuant to the orders of the [SDNY] Bankruptcy Court," *id.* ¶ 22.

## II. Analysis

Plaintiffs argue in support of their pending motion that I must abstain from hearing this proceeding under 28 U.S.C. § 1334(c)(2) and that I should remand the case to the Court of Chancery on equitable grounds pursuant to 28 U.S.C. § 1452(b).

### A. Mandatory Abstention under 28 U.S.C. § 1334(c)(2)

Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an

4

> action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The statute "is based on comity." *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006). As the Court noted in *Stoe*, § 1334(c)(2) "on its face ... reflects a congressional judgment that a party who wishes to litigate a state claim in a state court, but finds himself in a federal court solely because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that [adjudication] will not adversely affect the bankruptcy proceedings." *Id.*

In *Stoe*, the Court held that "upon a timely motion under § 1334(c)(2), a district court *must* abstain if" five requirements are met:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

*Id.* at 213 (emphasis in original). The Objecting Defendants do not dispute that Plaintiffs' motion is timely or that Plaintiffs have met their burden to establish the fourth requirement of the *Stoe* test. Some or all of the Objecting Defendants, however, dispute whether Plaintiffs meet each of the remaining *Stoe* requirements. I address those requirements in turn.

5

### 1. The Proceeding is Based on A State Law Claim

The SHIP Defendants argue that § 1334(c)(2) applies only to proceedings that are based solely on state law claims and, therefore, Plaintiffs fail to satisfy the first *Stoe* requirement for mandatory abstention. In the SHIP Defendants' words, this action "is not a proceeding based upon a State law claim or State law cause of action" but "[r]ather, . . . is a proceeding based on foreign law." D.I. 17 at 10 (quotation marks omitted).

The SHIP Defendants fairly characterize this proceeding as "based on foreign law." After all, Counts IV, V, and VI of the Complaint plead claims based on Cayman Islands law. But for the same reason this proceeding can be characterized as "based on foreign law," it is also fairly characterized as "based on state law" (or "based on a state law claim"), since Counts I, II, III, VII, and VIII of the Complaint plead claims based on Delaware law.

By its terms, § 1334(c)(2) applies to proceedings that are "based upon a State law claim or State law cause of action." Read as a whole, § 1334(c)(2) makes clear that its abstention provision is not limited to proceedings that are based solely on state law claims.

Neither § 1334 nor Title 28 define "based upon."[2] As a general matter, "based upon" can mean "based at least in part upon," "based exclusively (or solely) upon," or even "based largely (or substantially) upon." Context drives the meaning of the two words if left unadorned. Audiences, for example, understand that not every detail in a fictionalized movie advertised to be "based on a true story" is in fact true. Such movies typically come with a disclaimer that names and details have been changed to protect the innocent. These movies are not "based exclusively on" the true story, but rather are "based in part on" or "based substantially on" the true story. By contrast, when a professor tells her students that their grades will be "based on their homework and test results," the students understand that their class participation will have no bearing on the final grades. Their final grades will be "based solely on" their homework and test grades.

The fact that § 1334(c)(2) recites "based upon *a* State law claim" indicates that Congress used "based upon" in § 1334(c)(2) to mean "based at least in part on." Otherwise, § 1334(c)(2) would be limited to cases in which a single state law claim was alleged. Nothing in the text of the statute suggests that Congress intended for district courts to abstain from hearing removed state court actions only if those actions involve a single claim for relief. The SHIP Defendants have

---

[2] There is also no discussion about the meaning of "based upon" in § 1334(c)(2)'s legislative history. *See generally* 130 Cong. Rec. 20080–94 (1984).

offered no reason why limiting abstention only to that circumstance would promote the purpose of the statute, and I can think of none. It makes no sense that Congress would afford to a plaintiff who asserted a single state law claim arising out of a transaction the right to insist on a state court's adjudication of that claim, but not afford the same right to a plaintiff who asserted multiple state law claims arising out of the transaction. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

The irony is not lost on me that the SHIP Defendants use "based on" in their briefing consistent with the way the phrase is used in § 1334(c)(2). They insist that "th[is] proceeding is based on foreign law." That assertion is only accurate if "based on" means "based at least in part on." Because Plaintiffs have pleaded five state law claims, this proceeding is "based upon a state law claim," and Plaintiffs have met the first *Stoe* requirement.

### 2. The Claims Do Not Arise Under Title 11 or Arise In a Case Under Title 11

To satisfy the second *Stoe* requirement, the claims must "relate to" but not "arise under" title 11 or "arise in" a title 11 case.[3] The Objecting Defendants insist

---

[3] For reasons unclear to me, at times in their opening memorandum of law Plaintiffs appeared uncertain about whether this proceeding is related to the SDNY

that Plaintiffs' claims arise under and in title 11 because Trott and Smith brought the claims "pursuant to powers granted to them under chapter 15 of the Bankruptcy Code and pursuant to explicit orders of the Bankruptcy Court." D.I. 19 at 6.[4] Putting aside the fact that PGS also brought the claims in question, this argument fails for two reasons.

First, Trott and Smith's authority to bring the claims on behalf of PPVA is not dependent on the Bankruptcy Court's orders. *See In re Loy*, 380 B.R. 154, 165 (Bankr. E.D. Va. 2007) ("a foreign representative may—prior to or without obtaining prior permission of a bankruptcy court—sue to collect on a claim of the debtor, even if such suit implicates the comity or cooperation of a court"). Section 1509(f) of the Code expressly provides that "the failure of a foreign representative to commence a case or to obtain recognition under [Chapter 15] does not affect any right the foreign representative may have to sue in a court in the United States to

---

Chapter 15 proceeding. *See, e.g.*, D.I. 10 at 2 (noting that "the claims at issue in th[is] Action are, *at best*, noncore claims over which this Court has only 'related to' subject matter jurisdiction under 28 U.S.C. § 1334(b)") (emphasis added); *id.* at 8 ("th[is] Action is *at best* a non-core proceeding based on this Court's 'related to' jurisdiction[.]") (emphasis added). Nonetheless, in their reply, Plaintiffs stated unequivocally that this action "is simply 'related to' the PPVA Chapter 15 Case." D.I. 22 at 7.

[4] D.I. 19 is the Removing Defendants' brief filed in opposition to Plaintiffs' remand motion. The SHIP Defendants "incorporate[ed] by reference the arguments" made by the Removing Defendants in opposition to Plaintiffs' motion. D.I. 17 at 7 n.2.

collect or recover a claim which is the property of the debtor." 11 U.S.C. § 1509(f).

Second, even if Trott and Smith's authority to bring claims on behalf of PPVA in the United States depended on the Bankruptcy Court's orders, the claims themselves were not created by the Bankruptcy Code and could exist outside the context of a bankruptcy proceeding. The nature of a claim and the standing to bring it are two different things. A claim "arises under" title 11 only if "the Bankruptcy Code creates the cause of action or provides the substantive rights invoked." *Stoe*, 436 F.3d at 217. Claims "arise in" a case under title 11 only if the claims "by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case." *Id.* at 218 (citations omitted). In this case, the claims alleged in the Court of Chancery Complaint are creatures of Delaware and Cayman Island law. They were not created by title 11. Moreover, they are not asserted and need not be asserted in the context of a bankruptcy proceeding. Accordingly, Plaintiffs have satisfied *Stoe*'s second requirement.

### 3. Federal Courts Would Not Have Jurisdiction over The Claim But for Its Relation to A Bankruptcy Case

The SHIP Defendants—but not the Removing Defendants—argue that this Court would have jurisdiction over Plaintiffs' claims independent of the Court's bankruptcy jurisdiction conferred by § 1334(b), and that, therefore, Plaintiffs fail to meet the third *Stoe* requirement. *See* D.I. 17 at 14–17. Their argument is twofold.

10

First, the SHIP Defendants intimate, but do not expressly assert, that diversity jurisdiction exists under § 1332; and they contend that Plaintiffs' failure to demonstrate in their opening brief a lack of diversity among the parties means that Plaintiffs are precluded from making that demonstration in their reply brief and from availing themselves of abstention under § 1334(c)(2). *Id.* The SHIP Defendants specifically fault Plaintiffs for not identifying in their opening brief the citizenship of the members of PGS, a Delaware LLC. *Id.* at 14.[5]

I find it telling that the Removing Defendants did not join in this line of argument; and I will not give credence to this "gotcha" tactic. The only source of jurisdiction stated in the removal notice was § 1334(b). It was therefore understandable that Plaintiffs stated in conclusory fashion in their opening brief that diversity jurisdiction did not exist and that they met the third *Stoe* requirement. Plaintiffs identified in their reply brief the citizenship of PGS's members, and there is no dispute that diversity jurisdiction does not exist here.

The SHIP Defendants' second argument with respect to the third *Stoe* requirement is similarly devoid of merit (and, understandably, not endorsed by the Removing Defendants). The SHIP Defendants contend that PGS is "controlled by a receiver appointed by the United States District Court for the Eastern District of

---

[5] *See Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337, 348 (3d Cir. 2013 ("[T]he citizenship of a limited liability company is determined by citizenship of each of its members.").

11

New York as receiver over certain entities (the 'PPCO Receiver'), including Platinum Partners Credit Opportunities Master Funds ('PPCO')" and that this receiver, Trott, and Smith are the "true parties-in-interest" in this case. D.I. 17 at 1. According to the SHIP Defendants, "the overlay of equity receivership principles and chapter 15 concepts in the actions is foreseeable" and "[w]hen these claims are adjudicated they *could give rise to federal questions* best decided by federal courts and not the Court of Chancery." D.I. 17 at 16-17 (emphasis added). In a footnote, the SHIP Defendants state that "[w]hile the Second Circuit has held that mere presence of an federal equity receiver as plaintiff does not in itself give rise to a federal question, [citation omitted], SEC Receivers must file their appointment order under 28 U.S.C. § 754, which *could give rise* to an issue for a dismissal motion that, if this case is remanded, would require the Court of Chancery to interpret a federal question." *Id.* at 16 n.6 (emphasis added).

As with diversity jurisdiction, the SHIP Defendants do not actually allege that federal question jurisdiction exists here. But instead of intimating that federal question jurisdiction currently exists—as they did with diversity jurisdiction—the SHIP Defendants expressly state that federal question jurisdiction *could* arise—i.e., that it could possibly exist *in the future*. In so doing, the SHIP Defendants implicitly admit that federal question jurisdiction does not currently exist. There being no reason to conclude that federal question currently exists or existed at the

time Plaintiffs filed their Complaint, Plaintiffs have satisfied the third *Stoe* requirement.

**4. The Action Can Be "Timely Adjudicated" in the State Forum**

The Objecting Defendants argue that the fifth *Stoe* requirement cannot be met because Plaintiffs' claims will not be "timely adjudicated" in the Court of Chancery. The thrust of their argument is that "[t]his action is but one prong of a complex litigation stemming from a massive purported fraud" that is the subject of consolidated actions in a SDNY district court, and that "[r]emand raises the prospect of duplicative discovery, inconsistent rulings, and delay with respect to the adjudication of the Claims." D.I. 19 at 13. This argument fails for two reasons. First, denial of the remand motion will not result in consolidation of this action with the SDNY actions. Denial of the motion will simply keep the case before me. (There is no pending motion to transfer.) Second, the Court of Chancery is well known for its expeditious handling of complex civil litigation.

Accordingly, Plaintiffs have met the fifth *Stoe* requirement; and, because they have met all five of the *Stoe* factors, I must abstain from hearing this proceeding.

**B. Equitable Remand**

There remains the question of whether I should remand this proceeding to the Court of Chancery. Under § 1452(b), if, as in this case, a claim or cause of

13

action is removed to the district court pursuant to § 1452(a), the district court "may remand such claim or cause of action on any equitable ground."

Citing *Firefighters' Retirement System v. Citco Group, Limited*, 796 F.3d 520 (5th Cir. 2015), the Objecting Defendants argue that because this proceeding is related to a Chapter 15 case, I am prohibited from remanding the proceeding under § 1452(b). D.I. 19 at 14. The Fifth Circuit held in *Firefighters* that a district court "exceeded its statutory authority by permissively abstaining [under § 1334(c)(1)] and equitably remanding [a] lawsuit [under § 1452(b)] even though [the lawsuit] relate[d] to Chapter 15 bankruptcy cases." 796 F.3d at 526. Although the Court acknowledged that "§ 1452 does not explicitly exclude Chapter 15 cases," it held that § 1452(b) "should be read *in pari materia* with" § 1334(c)(1), *id.* at 527, which provides that "*[e]xcept with respect to a case under chapter 15 of title 11*, nothing in this section prevents a district court . . . from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11," § 1334(c)(1) (emphasis added). The Court interpreted the "except with respect to" introductory clause of § 1334(c)(1) to mean that a district court may not under that subsection abstain from a proceeding that arises in or is related to a Chapter 15 case. *Id.* at 527. And, the Court held that "[r]eading §§ 1334(c)(1) and 1452(b) together, . . . the prohibition against abstention from proceedings related to

14

Chapter 15 cases also applies to bar the equitable remand of those proceedings under § 1452." *Id.*

I will not apply *Firefighters*' rationale or holding to this case for three reasons. First, as the Court acknowledged in *Firefighters*, "§ 1452 does not explicitly exclude Chapter 15 cases." 436 F.3d at 527. The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (quotation marks and citations omitted). Second, *Firefighters* addressed permissive abstention under § 1334(c)(1), but this case involves mandatory abstention under § 1334(c)(2) and there is no language in § 1334(c)(2) that suggests in any way that it does not apply to proceedings related to Chapter 15 cases. Third, the Third Circuit held in *Stoe* that "mandatory abstention [under §1334(c)(2)] is not in conflict with 28 U.S.C. § 1452, which governs removal and remand in bankruptcy cases." 436 F.3d at 214–15. As the Court explained:

> [S]ection 1334(c)(2) does not purport to interfere with a court's authority to remand under § 1452(b). Rather, § 1334(c)(2) governs only whether a district court must abstain from hearing a case. Once a district court determines that it either must abstain from hearing a removed case pursuant to [§] 1334(c)(2) or should abstain pursuant to [§] 1334(c)(1)'s permissive abstention provisions, it can consider whether there is reason for the

> suit to proceed in state court. If so, there will be an equitable ground justifying remand under § 1452(b).

436 F.3d at 215 (citations omitted). Thus, the Court contemplated in *Stoe* that district courts would remand cases under § 1452(b) after abstaining under § 1334(c)(2).

The above-quoted passage from *Stoe* also makes clear that abstention itself constitutes an equitable ground sufficient to justify remand under § 1452(b). The Court stated that "if" a district determines that it must abstain under § 1334(c)(2), "there *will be* an equitable ground justifying remand under § 1452(b)." 436 F.3d at 215 (emphasis added). Moreover, the Court cited in support of that statement four decisions in which courts explicitly stated that abstention itself is an equitable ground upon which remand can be ordered under § 1452(b). *See Stoe*, 463 F.3d at 215 (citing *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 323 F. Supp. 2d 861, 878 (S.D. Ohio 2004) ("One equitable ground on which a court may order remand is a finding that mandatory abstention is required"); *In re Midgard Corp.*, 204 B.R. 764, 775 (B.A.P. 10th Cir. 1997) ("If abstention is required under section 1334(c)(2), a court may remand the proceeding to state court under 28 U.S.C. § 1452(b), which allows a court to remand a 'claim or cause of action on any equitable ground'"); *In re Revco D.S., Inc.*, 99 B.R. 768, 776 (N.D. Ohio 1989) ("This court adopts the position . . . that mandatory abstention is an additional equitable ground for remand"); *In re Chiodo*, 88 B.R. 780, 785 (W.D. Tex. 1988)

(adding to "list of equitable considerations" that may justify removal under § 1452(b) that "abstention is mandated by section 1334(c)(2)")). And, finally, the Court also cited approvingly in *Stoe* a law review article for the proposition that the "abstention provisions [of § 1334], if met, should provide 'equitable ground' justifying remand" under § 1452(b)." 436 F.3d at 215 (citing Joseph C. Cavender, Comment, *On the Need to Conduct Abstention Analysis in Bankruptcy–Related Cases Removed to Federal Court*, 71 U. Chi. L. Rev. 289, 290 (2004)).

That mandatory abstention alone constitutes an equitable ground sufficient to justify remand under § 1452(b) is consistent with the purpose of § 1334(c)(2). That purpose, evident "on [the] face" of the statute, is to ensure that a party that wishes to litigate state law claims in a state court "but finds [itself] in a federal court solely because the controversy is related to a bankruptcy, . . . [can] insist upon a state adjudication if that [adjudication] will not adversely affect the bankruptcy proceedings." *Stoe*, 436 F.3d at 214.

In this case, there is no reason to believe that the Court of Chancery's adjudication of Plaintiffs' claims will adversely affect the SDNY Chapter 15 case. The Chapter 15 case is an ancillary proceeding to the Cayman Island liquidation; and it does not involve claims adjudication, pending litigation, a plan, or other administrative efforts. Accordingly, I will grant Plaintiffs' motion to remand this proceeding to the Court of Chancery.

## III. Conclusion

For the reasons discussed above, I will abstain from this proceeding and grant Plaintiffs' motion to remand.

The Court will issue an Order consistent with this Memorandum Opinion.